### SLATER v. AMERICAN PALACE CAR CO.

(Supreme Court, Appellate Division, First Department.  November 17, 1911.)

1. ATTACHMENT (§ 102*)—PROCEEDINGS—AFFIDAVIT—SUFFICIENCY.

  Where the complaint for breach of contract is used as an affidavit for attachment, the complaint must show the essential elements of a contract and breach thereof either by positive allegations of facts or by giving the sources of information and grounds of belief when an allegation is made on information and belief; and, where the complaint fails so to do, it cannot support an attachment.

  [Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 263–272; Dec. Dig. § 102.*]

2. BROKERS (§ 48*)—COMPENSATION—RIGHT.

  A broker obtained from a corporation an option to call for its bonds with stock bonus on a sale thereof at a price fixed for a specified commission. He did not sell any bonds. A third person signed an instrument containing an application for bonds, but he did not pay anything to the broker or to the corporation, though the corporation did everything it could to make the transaction a success. *Held*, that the broker was not entitled to commissions.

  [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 65; Dec. Dig. § 48.*]

Appeal from Special Term, New York County.

Action by Conrad B. Slater, Jr., against the American Palace Car Company. From an order denying a motion on the original papers to vacate an attachment, and a further order denying a motion on affidavits for similar relief, defendant appeals. Appeal from first order dismissed, and second order reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Arthur H. Longfellow (Arthur O. Townsend, of counsel, and Hamilton Rogers, on the brief), for appellant.

Herrick, Breckenridge, Carney & Sloane (Philip W. Carney, of counsel), for respondent.

CLARKE, J. [1] The first order appealed from denied a motion to vacate an attachment upon the papers upon which it was granted. The defendant is a foreign corporation. The affidavit upon which the attachment was granted was made by the plaintiff and avers:

"That he has a cause of action against the defendant, which arose within the state of New York, for breach of an express contract, as set forth in the annexed complaint, to which reference is hereby made, and which is hereby incorporated in this affidavit, and is entitled to judgment for the sum of $10,237.50, over and above all counterclaims known to him."

Three allegations are contained in that paragraph, each one of which is a conclusion. No facts are shown to enable the court to see whether the conclusions are properly drawn. The complaint alleges:

"That on or about the 28th of November, 1910, plaintiff and defendant entered into an agreement whereby plaintiff undertook to procure a purchaser or purchasers for certain bonds of the defendant corporation on its behalf in certain amounts and at certain prices.

"III. Defendant agreed by said contract that for any sales so made it would pay to plaintiff a commission of 10 per cent. of the cash price at which the sale became effective and 10 per cent. in stock of the defendant at par upon the face value of the bonds sold.

"IV. That pursuant to the said contract plaintiff procured a purchaser for bonds of defendant in the amount and at the price specified in said contract.

"V. That said purchaser, on or about the 8th day of December, 1910, was accepted by the defendant, and thereupon duly entered into a contract with the defendant for the purchase of said bonds.

"VI. That, pursuant to plaintiff's contract of employment with defendant, he thereby and on that date became entitled to a cash commission of $4,987.50, and a commission in stock of the par value of $5,250.

"VII. On information and belief, that defendant's stock is of a value equal to its par or over."

It will be seen that there is no fact therein alleged which enables the court for itself to ascertain how much is due. The essential elements of the contract are omitted. It is not stated what the bonds were, what the face or real value thereof was, what the par or real value of the stock was, or how many bonds had been agreed to be purchased. The allegation of the sixth paragraph is a pure conclusion. The allegation in the seventh is on information and belief. While, upon attachment, the court does not search the complaint as upon demurrer, yet, if the complaint is to be used as an affidavit, the affidavit and the complaint must show the essential facts, and, if a necessary allegation is made on information and belief, the sources of the information and the grounds of the belief must be stated.

The papers wholly fail to support the attachment. The motion to vacate should have been granted.

[2] After the order denying the motion to vacate on the original papers had been entered, the defendant again moved to vacate upon affidavits. Upon the additional papers it appears that the plaintiff is

a nonresident, a clerk in the employ of a trust company in Philadelphia, and that the contract sued upon is as follows:

"December 2, 1910. [Addressed to the plaintiff at Philadelphia.] Dear Sir: This is to certify that any time within 90 days from November 28, 1910, you may call upon this company for delivery to you of any portion of $50,000 of its first mortgage gold bonds at 95% of par value, with a stock bonus of 40% for disposing of same at that price. It is further agreed that you are to receive a cash commission of 10% in stock of the company at par, if the $50,-000 be taken up within the ninety days specified."

This is an option, dependent upon the disposing of the amount of bonds which could be called, at the price named, to be taken up within the 90 days specified, and does not sustain the allegations of the complaint, which set up merely a contract of brokerage. On February 20th plaintiff wrote:

"So far I haven't been able to sell any."

The secretary of the company avers that:

"During the month of December, 1910, the plaintiff informed the defendant, in substance, that he had found a purchaser in Pennsylvania for the bonds referred to in said option, and in reliance on this information, and at plaintiff's request, the defendant went to the trouble and expense of sending said bonds and the accompanying stock to a trust company in Philadelphia for delivery to said supposed purchaser; but said supposed purchaser did not materialize, and did not accept or pay for any of the bonds or stock whatsoever, and said securities were finally sent back from Philadelphia by the trust company with whom the same had been placed for delivery under the terms of said option or offer of December 2, 1910."

The plaintiff submitted in his papers an application of a Mrs. Everts for 105 bonds, upon which he had written:

"Accepted. C. B. Slater, Jr. Dec. 8, 1910."

And a letter from the secretary of the defendant:

"This will confirm my telephone conversation with you this evening. My memorandum shows as follows: 105 bonds to Clara C. Everts. * * * My understanding is that we are to send over 105 bonds, of the denomination of $500 each, with their bill of lading so as to reach the Pennsylvania Company at banking hours Saturday morning, when the bonds will be taken up and a certified check for same delivered. Accompanying the bonds will be a certificate of stock for 210 shares in the name of Clara C. Everts. The 105 bonds at 95 figures up to $49,875. Is the draft to be made for this amount? If you have not written to-night, it would be well for you to get off a special delivery letter in the morning, giving all details, so that there shall be no possible error in forwarding the bonds and stock and in preparing the bill of lading and draft for same."

The plaintiff wrote on February 20, 1911:

"I want to state right here that my belief in your securities is absolutely sound, and I believe your bonds can be sold right here in Phila. So far I haven't been able to sell any. If you can see it that way, I am perfectly agreeable to work on a contract of the same terms after my option expires. I think it would be only just, as so far I show a deficit of about $400 as my net personal setback. Doubtless you hold me charged with a vast amount of wasted time, energy, etc., anent the Everts affair."

On February 27, 1911, the defendant wrote to plaintiff:

"This is to notify you that your contract with this company, giving you an option on $50,000 of its first mortgage gold bonds, approved by our executive committee on the 2d day of December, 1910, expires on Tuesday, February 28, 1911, by time limitation."

It is apparent from these papers that plaintiff had an option to call for the bonds, and upon the sale of the same at a price stated to receive a commission for disposing of same at that price. He says himself that he did not sell any. He makes no claim now that he sold any bonds. He made no claim for compensation until months after the whole transaction was closed. The paper signed by Mrs. Everts, which he introduces as proof of performance on his part, is ineffective, because it does not appear that she ever paid a dollar to the plaintiff or to the company. The papers show that she never did. The defendant on its part did everything it could to make that transaction a success. It forwarded the bonds and stock to Philadelphia, but they were never taken up. Plaintiff's compensation depended upon his *disposing* of the bonds at the price mentioned. As he did not accomplish this, he never became entitled to any compensation.

The contract set up in the complaint is not the one disclosed by the proof, and the papers establish that the attachment was improvidently granted.

The appeal from the first order should be dismissed, and the second order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs to the appellant. All concur.